IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DEREK ROTONDO, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>JPMORGAN CHASE Bank, N.A.,<br><br>       Defendant. | No. 1:19-cv-408<br><br>District Judge<br>Magistrate Judge<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

  Plaintiff Derek Rotondo ("Plaintiff" or "Mr. Rotondo") brings this class action on behalf of himself and all others similarly situated against Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"). Plaintiff complains and alleges as follows:

## INTRODUCTION

  1. Mr. Rotondo brings this action to challenge Chase's policies and practice of discriminating against birth fathers in the provision of paid parental leave.

  2. During his employment with Chase, Mr. Rotondo and his wife have had two children. After the birth of both of his children, Mr. Rotondo was eligible for and took paid parental leave under Chase's paid parental leave policy, but Chase limited the amount of paid parental leave that Mr. Rotondo was eligible to take on the basis of his sex.

  3. Until revising its procedures in December 2017, Chase presumptively treated biological mothers as primary caregivers who are eligible for 16 weeks of paid parental leave and presumptively treated fathers as non-primary caretakers who are eligible for 2 weeks of paid parental leave. Chase's policy previously afforded primary caregivers 12 weeks of paid parental

leave while affording non-primary caregivers 1 week of paid parental leave. Beginning March 1, 2016, and retroactively for births occurring on or after December 8, 2015, Chase's policy afforded primary caregivers 16 weeks of paid parental leave and afforded non-primary caregivers 2 weeks of paid parental leave. Under both versions of the policy prior to December 2017, as they were applied by Chase, fathers could only be treated as primary caregivers if they were able to show that their spouse or domestic partner had returned to work or that they were the spouse or domestic partner of a mother who was medically incapable of caring for the child. Birth mothers did not need to make a similar showing.

4. Mr. Rotondo initiated this action to challenge Chase's policy that discriminated against male employees by affording birth fathers less parental leave than what Chase offered to birth mothers.

5. By depriving fathers of paid parental leave benefits that are equal to what Chase afforded to birth mothers, Chase's policies and practices constituted sex discrimination in the terms and conditions of employment. These policies and practices constituted a sex-based classification and a sex-based stereotype that violates Title VII of the federal Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1)-(2), and equivalent antidiscrimination laws in effect in numerous other states. Chase's policies replicated gender stereotypes about the caregiving roles of mothers and fathers and prevented Mr. Rotondo and other birth fathers from taking paid parental leave that was presumptively afforded to birth mothers unless they established that they were the primary caregiver.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, because Plaintiff is asserting federal claims under Title VII of the Civil

Rights Act. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant Chase, as the alleged unlawful employment practice was allegedly committed in this District, and employment records relevant to such employment practice are maintained and administered in this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 42 U.S.C. § 2000e-5(f)(3) because Chase operates and does business here, maintains business records in Ohio, and alleged unlawful employment practices were committed in this District.

## PARTIES

**Plaintiff**

9. Named Plaintiff Derek Rotondo is and was at all relevant times a resident of Ohio and an employee of Defendant. He files this action on behalf of himself and others similarly situated.

**Defendant**

10. Defendant is and was at all relevant times a financial services company with its home office, as designated by its articles of association, in Ohio.

11. Chase employs over 250,000 employees and operates branches and offices nationwide.

12. At all relevant times, Defendant was an employer within the meaning of Title VII, the Ohio Fair Employment Practices Law, Ohio Rev. Code Ann. § 4112.02(A) ("FEPL"); the New York State Human Rights Law, N.Y. Exec. § 296 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); the California Fair Employment and Housing Act, Cal. Gov. Code § 12940 *et seq.* ("FEHA"); the Washington State

Law Against Discrimination, Rev. Code Wash. 49.60.010 *et seq.* ("WLAD"); the Alaska Human Rights Law, Alaska Stat. § 18.80.010 *et seq.* ("AHRL"); the Kentucky Civil Rights Act, Ky. Rev. Stat. § 334.010 *et seq.* ("KCRA"); the Maine Human Rights Act, Me. Rev. Stat. tit. 5, § 4572 ("MHRA"); the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-12 ("NJLAD"); the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1, *et. seq.* ("NCEEPA"); the South Dakota Human Relations Act, S.D. Codified Laws § 20-13-1 *et seq.* ("SDHRA"); the Vermont Fair Employment Practices Act, 21 Vt. Stat. Ann. § 495 ("VFEPA"); the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.* ("WVHRA"); the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107 *et seq.* ("ACRA"); the Louisiana Employment Discrimination Law, La. Rev. Stat. Ann. § 23.301 *et seq.* ("LEDL"); Michigan's Elliott Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2101 *et seq.* ("MELCRA"); the Minnesota Human Rights Act, Minn. Stat. 363A *et seq.* ("MNHRA"); the Oregon Fair Employment Practice Act, Or. Rev. Stat. 659A *et seq.* ("OFEPA"); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA"); and the District of Columbia Human Rights Act, 1. D.C. Code § 2-1401, et seq. ("DCHRA").

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff filed a timely charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 15, 2017.

14. Plaintiff received his Right to Sue letter on February 8, 2019.

## FACTUAL ALLEGATIONS

15. Mr. Rotondo began working for Chase in 2010. Since that time, he has worked for Chase in Ohio. He has worked in several different positions during his time at Chase, and

currently works as an Associate and Investigator in Global Security and Investigations on the National Vulnerable Adult Investigations team.

16. Mr. Rotondo's first child was born in 2015. Chase's parental leave policy in effect at that time ("the pre-2016 Policy") provided that employees who were non-primary caregivers were eligible for 1 week of paid parental leave, while employees who were primary caregivers were eligible for 12 weeks of paid parental leave.

17. Following the birth of his first child on May 2, 2015, Mr. Rotondo took one week of paid parental leave pursuant to Chase's pre-2016 Policy and one week of accrued paid time off. Mr. Rotondo would have served as the primary caregiver and would have taken more than one week of paid parental leave had he been eligible to do so under the pre-2016 Policy, but he was not eligible to receive a greater amount of paid parental leave as a primary caregiver because of the presumption in Chase's policy that treated men differently from women.

18. Chase changed its parental leave policy in March 2016, retroactive to births occurring on or after December 8, 2015. The revised policy ("the 2016 Policy") allowed primary caregivers of newly born or adopted children to receive up to 16 weeks of paid parental leave to care for a child and allowed non-primary caregivers to receive up to 2 weeks of paid parental leave to care for a child.

19. The 2016 Policy further specified that to change status from non-primary to primary caregiver, an employee would have to demonstrate that the employee had become the primary caregiver. To do so, Chase required that the employee's spouse or domestic partner had returned to work, or that the employee was the spouse or domestic partner of a mother who is medically incapable of any care of the child.

20. In 2016, Mr. Rotondo's wife became pregnant with their second child.

21. On or about May 15, 2017, three weeks before the birth of his second child, Mr. Rotondo contacted Chase's "Ask Access HR" service by phone to request that he be allowed to take 16 weeks of paid leave as a primary caregiver upon the birth of his second child. Ask Access HR is a unit within Chase that answers questions related to some of Chase's human resources policies, including—at that time—Chase's parental leave policy.

22. During Mr. Rotondo's May 15 conversation with Access HR, a representative stated that Chase's policy that was in effect at the time—the 2016 Policy—provided up to 16 weeks of paid parental leave to primary caregivers to be taken consecutively immediately following the birth or placement of a child, but provided 2 weeks of paid parental leave to non-primary caregivers. But the AccessHR representative further informed Mr. Rotondo that Chase presumptively considers mothers to be primary caregivers, and that he could qualify as the primary caregiver if: (1) he showed that his wife had returned to work before the expiration of 16 weeks, or (2) he submitted documentation showing that his wife was "medically incapable" of providing any care for their child.

23. That same day, May 15, 2017, following Mr. Rotondo's conversation with Access HR, Mr. Rotondo contacted Access HR in writing via a web portal to confirm that the information he had received over the phone was correct. Later that day, he received a response from an Access HR representative stating that "As per our policy Birth Mothers are what we consider as the Primary Caregivers [*sic*]," and confirming that per Chase's policy, a father may be considered the primary caregiver if (1) his spouse or domestic partner who is the primary caregiver returns to work prior to using all 16 weeks, in which case the father could utilize the remaining balance of the 16 weeks; or (2) the mother is "medically incapable of any care of the

child," in which case the father must provide documentation from his spouse or domestic partner's physician of that incapacity.

24. From these conversations, Mr. Rotondo understood that under Chase's 2016 Policy, if he were a birth mother, he would be presumptively eligible to receive 16 weeks of paid parental leave as a primary caregiver, regardless of whether his spouse had returned to work or was medically capable of providing any care for their child, but that as a birth father, he was presumptively limited to two weeks of paid parental leave immediately following his child's birth, unless he could make an additional showing that he fell under one of the two delineated exceptions to the default primary caregiver rule.

25. On June 6, 2017, Mr. Rotondo's wife gave birth to their second child, another boy. His wife experienced a normal delivery without any complications and recovered well from childbirth.

26. In 2017, after the birth of his second child, Mr. Rotondo did not qualify as a primary caregiver under the first exception to Chase's 2016 Policy, because his wife, as a teacher, has the summer off and therefore Mr. Rotondo could not demonstrate that his wife had returned to work. If Mr. Rotondo had been the child's birth mother, he presumptively would have been able to receive the full 16 weeks of paid parental leave as a primary caregiver, regardless of whether or not his spouse was working during the 16-week parental leave period.

27. Mr. Rotondo did not qualify for the second exception as a primary caregiver under Chase's 2016 Policy, because his wife had no medical limitations on her ability to provide "any care" for their child.

28. In June 2017, Mr. Rotondo was initially only approved to take paid parental leave for two weeks following the birth of his second child.

29. On June 15, 2017, Plaintiff timely filed a Charge of Discrimination with the EEOC challenging Chase's policy and practice of denying primary caregiver leave to fathers and alleging class-wide discrimination on the basis of sex and sex stereotypes on behalf of himself and a class of other similarly situated male employees.

30. Upon information and belief, Chase's practice of treating birth mothers as the presumptive primary caregiver prevented, discouraged, and deterred Mr. Rotondo and other birth fathers employed by Chase from seeking to apply to be primary caregivers, from being approved as primary caregivers, and from receiving the full amount of paid parental leave for which they would otherwise have been eligible had they been eligible birth mothers.

31. In addition, upon information and belief, Chase engaged in a pattern or practice of implementing the pre-2016 and 2016 Policies in which Chase's staff and third-party agents informed birth fathers like Mr. Rotondo that birth fathers could not qualify as primary caregivers because mothers were presumptively considered primary caregivers, because men could not qualify as primary caregivers, and/or because certain birth fathers did not meet any of the exceptions that would permit them to be primary caregivers.

32. Upon information and belief, many birth fathers were prevented, discouraged, and deterred from applying to be primary caregivers or were outright denied the opportunity to be primary caregivers under Chase's paid parental leave program, due to Chase's pre-2016 and 2016 Policies and due to Chase's pattern or practice in implementing its parental leave policies.

33. Chase has discriminated against Mr. Rotondo and other birth fathers employed by Chase pursuant to a company-wide policy, pattern, or practice that discriminates against men and that causes them to receive employee benefits that are inferior to those provided to birth mothers. Chase's 2016 Policy treated birth mothers as presumptive primary caregivers, eligible for 16

weeks of paid parental leave, without regard to whether their domestic partner or spouse was working or able to provide care for the child, while it treated birth fathers as presumptively non-primary caregivers, eligible for 2 weeks of paid parental leave, and requiring birth fathers to demonstrate that their spouses or domestic partners had returned to work or that the mothers of their children were medically incapable of any care of the children if they wished to qualify as primary caregivers.

34. In December 2017, Chase changed its policy to eliminate gender-specific language, and to make clear that fathers as well as mothers were eligible to be designated as primary caregivers.

## CLASS ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Plaintiff Class of male employees of Chase nationwide who were denied primary caregiver status or deterred by Chase from seeking primary caregiver leave following the birth of a child under Chase's paid parental leave policy. Plaintiff will seek to certify the Plaintiff Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**Rule 23(a)**

36. **Plaintiff Class Definition.** Plaintiff brings each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following persons:

All male employees of Chase nationwide who took the maximum amount of non-primary caregiver leave available under Chase's policy in effect at the time for the birth of one or more child (either one week or two weeks depending on the time period, would have otherwise qualified for paid parental leave, but did not take primary leave, and whose

9

request for non-primary or primary parental leave or leave was within the applicable statute of limitations period(s) for the federal and state claims raised herein.

37. The Plaintiff seeks class certification for purposes of the prosecution of all state and federal claims alleged herein. The limitations period for each federal or state law claim is the full statute of limitations period for each such claim.

38. **Numerosity.** The Plaintiff Class is so numerous that joinder of all members is impracticable. Chase employs hundreds of thousands of individuals in dozens of states across the United States. Upon information and belief, thousands of birth fathers employed by Chase were eligible to seek paid parental leave as a primary caregiver under Chase's pre-2016 and 2016 Policies if they intended to serve as the primary caregiver of their child, and many of these individuals were disqualified or deterred from seeking or taking paid parental leave as primary caregivers under Chase's policies and practices.

39. **Commonality.** There are numerous questions of law or fact that are common to the Class Members. Upon information and belief, proposed Plaintiff Class Members were subjected to and injured by the same policies and practices under which birth fathers were denied access to paid parental leave equal to that afforded to birth mothers.

40. Plaintiff and Plaintiff Class Members experienced the same type of harm due to Chase's policies and practices, because Chase presumptively treated them as non-primary caregivers eligible for substantially fewer weeks of parental leave than birth mothers, while presumptively treating birth mothers as primary caregivers.

41. The questions of law or fact that are common to Class Members include:

    (a) Whether the 2016 Policy and the pre-2016 Policy violated Title VII, the Ohio Fair Employment Practices Law, and other state anti-discrimination laws by

10

denying birth fathers eligibility for paid parental leave as primary caregivers, unless they could demonstrate that they were a spouse or domestic partner of a mother who had returned to work or who was medically incapable of any care of the child, while birth mothers were presumptively treated as eligible primary caregiver leave without being required to make any such showing;

(b) Whether the pre-2016 Policy violated the Ohio Fair Employment Practices Law, and other state anti-discrimination laws by limiting birth fathers to one week of paid parental leave while affording birth mothers access to a substantially greater number of weeks of paid maternity leave;

(c) Whether and what types of injunctive and/or declaratory relief should be ordered with respect to Chase's policies and practices;

(d) Whether and what types and amounts of damages should be awarded to Plaintiff and members of the proposed Plaintiff Class.

42. **Typicality.** The claims of Plaintiff are typical of the claims of the Plaintiff Class he seeks to represent. The claims of Plaintiff arise from the same policies and practices and rely upon the same legal theories and factual allegations that the challenged policies and practices violate Title VII, the Ohio Fair Employment Practices Law and the equivalent state antidiscrimination statutes of other states in which Chase does business.

43. **Adequacy.** Plaintiff will adequately represent the members of the Class, does not have any conflicts with the other Class Members, and is represented by experienced counsel who have substantial experience in civil rights and employment discrimination and class action litigation, and who will vigorously prosecute the action on behalf of the Class. Plaintiff

understands his obligations as a class representative, has already undertaken steps to fulfil them, and is prepared to continue to fulfill his duties as a class representative in this action.

**Rule 23(b)(3)**

44. This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

45. The questions of law and fact common to the members of the Plaintiff Class predominate over questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

46. By resolving the common issues described above in a single class proceeding, each member of the proposed Plaintiff Class will receive a determination of whether Chase's policies and practices violated Title VII and various state anti-discrimination laws in the same uniform manner.

47. Members of the Class do not have a significant interest in individually controlling the prosecution of separate actions. The Class Members' potential damages are modest compared to the expense and burden of prosecuting a complex action like this.

48. Other than this action, no litigation concerning sex discrimination in the provision of paid parental leave has been commenced by any member of the Plaintiff Class against Chase.

49. Prosecuting this case as a single class action will ensure that there are not inconsistent judgments and that a single injunction and rule will apply to all employees of Chase nationwide, no matter where they reside.

50. Concentration of the litigation in this forum is desirable, as this action challenges company-wide policies and practices, and it will benefit the Plaintiff Class Members to have all of their claims and defenses adjudicated in a single proceeding.

## COUNT I

**Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.***

51.     Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

52.     Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). This provision prohibits intentional discrimination based on sex, including sex-based classifications and sex-based stereotypes, in the provision of employee benefits such as paid parental leave.

53.     Chase's pre-2016 and 2016 Policies treated mothers as presumptively eligible for primary caregiver leave, while treating fathers as presumptively ineligible for primary caregiver leave. They therefore imposed a sex-based classification that treated birth fathers in a manner that, but for their sex, would be different had they been birth mothers.

54.     The pre-2016 and 2016 Policies also rely upon and enforce a sex-based stereotype that women are or should be caretakers of children, and that women do or should remain at home to care for a child following the child's birth, while men are not or should not be caretakers and instead men do or should return to work shortly after the birth of a child.

55.     By instituting and operating these discriminatory policies and practices, Chase has intentionally treated male and female employees differently with respect to the compensation, terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a).

56.     As a result of Defendant's unlawful sex discrimination, Plaintiff and members of the proposed Class have suffered significant harm, including the loss of the paid time off, emotional pain and suffering, and other nonpecuniary losses.

13

## COUNT II

**(Violation of State Laws of OH, NY, CA, WA, AK, KY, ME, NJ, NC, SD, VT, WV, AR, LA, MI, MN, OR, TN, and DC)**

57. Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

58. Like Title VII, the laws of New York, Ohio, California, Alaska, Kentucky, Maine, New Jersey, North Carolina, South Dakota, Vermont, West Virginia, Arkansas, Louisiana, Michigan, Minnesota, Oregon, Tennessee, and the District of Columbia prohibit discriminating against employees on the basis of sex with respect to compensation, terms, conditions, or privileges of employment and/or make actionable the violation of such state laws. *See* FEPL, Ohio Rev. Code Ann. § 4112.02(A); the NYSHRL, N.Y. Exec. § 296 *et seq.*; the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*; the FEHA, Cal. Gov. Code § 12940 *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; the WLAD, Rev. Code Wash. 49.60.010 *et seq.*; the AHRL, Alaska Stat. § 18.80.010 *et seq.*; the KCRA, Ky. Rev. Stat. § 334.010 *et seq.*; the MHRA, Me. Rev. Stat. tit. 5, § 4572; the NJLAD, N.J. Stat. Ann. 10:5-12; the NCEEPA, N.C. Gen. Stat. § 143-422.1, *et. seq.*; the SDHRA, S.D. Codified Laws § 20-13-1 *et seq.*; the VFEPA, 21 Vt. Stat. Ann. § 495; the WVHRA, W. Va. Code § 5-11-1 *et seq.*; the ACRA, Ark. Code Ann. § 16-123-107 *et seq.*; the LEDL, La. Rev. Stat. Ann. § 23.301 *et seq.*; the MELCRA, Mich. Comp. Laws Ann. § 37.2101 *et seq.*; the MNHRA, Minn. Stat. 363A *et seq.*; the OFEPA, Or. Rev. Stat. 659A *et seq.*; the THRA, Tenn. Code Ann. § 4-21-101 *et seq.*; and the DCHRA, 1. D.C. Code § 2-1401, *et seq.* Each of these state laws and the DCHRA provides a greater amount of time for employees to file a charge or a legal action than Title VII does, including in the context of the claims in this action.

59. Chase's pre-2016 and 2016 Policies treated mothers as presumptively eligible for primary caregiver leave, while treating fathers as presumptively ineligible for primary caregiver leave. They therefore imposed a sex-based classification that treated birth fathers in a manner that, but for their sex, would be different had they been birth mothers.

60. The pre-2016 and 2016 Policies also rely upon and enforce a sex-based stereotype that women are or should be caretakers of children, and that women do or should remain at home to care for a child following the child's birth, while men are not or should not be caretakers and instead men do or should return to work shortly after the birth of a child.

61. By instituting and operating these discriminatory policies and practices, Chase has intentionally treated male and female employees differently with respect to the compensation, terms, conditions, and privileges of employment, in violation of the District of Columbia and state laws set forth above.

62. As a result of Defendant's unlawful sex discrimination, Plaintiff and members of the proposed Class have suffered significant harm, including the loss of the paid time off, emotional pain and suffering, and other nonpecuniary losses.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the following relief:

A. Declaratory relief, including but not limited to a declaration that Chase's 2016 and pre-2016 Policies violated Title VII and other equivalent anti-discrimination laws of the numerous states identified above;

B. Injunctive relief, including but not limited to an order that Chase preserve a gender-neutral paid parental leave policy, with the 2017 Policy serving as a floor

      unless a more generous policy is adopted; and that Chase provide training on the 2017 Policy to all managers, human resources personnel, and any third-party contractors employed by Chase to implement Chase's employee benefits policies to ensure that they are implemented in a gender-neutral manner.

C.     Monetary relief, including compensation for the value of any lost paid parental leave suffered by Plaintiff and the Class Members, and compensatory and consequential damages, including for emotional distress;

D.     Attorneys' fees and costs to the extent allowable by law;

E.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all matters alleged herein.

Dated: May 30, 2019

Respectfully submitted,

/s/ Freda Levenson
Freda Levenson (0045916)
*Trial Attorney*
**AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION**
4506 Chester Avenue
Cleveland, OH 44103
Telephone: (614) 586-1958
flevenson@acluohio.org

Peter Romer-Friedman (*pro hac vice* forthcoming)
Pooja Shethji (*pro hac vice* forthcoming)*
**OUTTEN & GOLDEN LLP**
601 Massachusetts Ave NW
Suite 200W
Washington, DC 20001
Telephone: (202) 770-7886
prf@outtengolden.com
pshethji@outtengolden.com

16

Deirdre Aaron (*pro hac vice* forthcoming)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
daaron@outtengolden.com

Galen Sherwin (*pro hac vice* forthcoming)
**AMERICAN CIVIL LIBERTIES UNION WOMEN'S RIGHTS PROJECT**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2644
gsherwin@aclu.org

\* Admitted in New York; not yet a member of the D.C. Bar; supervised by a member of the D.C. Bar.

*Attorneys for Plaintiff and the Putative Class*